# EXHIBIT 1

BB

AO 91 (Rev. 11/11) Criminal Complaint

2026R00024

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

UNITED STATES OF AMERICA

**Investigative – Filed Under Seal**

v.

Case No. 26-mj-23 (DLM)

1. ALFREDO ALEJANDRO ALJORNA
2. JULIO CESAR SOSA-CELIS

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

**Count 1**: On or about January 14, 2026, in the State and District of Minnesota, the defendants **Alfredo Alejandro ALJORNA** (YOB 1999), and **Julio Cesar SOSA-CELIS** (YOB 2001), each, aided and abetted by and aiding and abetting the other, did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in 18 U.S.C. § 1114, namely, Victim 1, a Deportation Officer of the United States Immigration and Customs Enforcement, who was engaged in, and on account of, the performance of official duties, and such acts involved physical contact with Victim 1, all in violation of Title 18, Sections 2 and 111(a)(1).

I further state that I am a Special Agent with the FBI, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒Yes ☐ No

*Complainant's signature*

Timothy G. Schanz, Special Agent, FBI

*Printed name and title*

Sworn to and signed before me, by reliable electronic means (Zoom and box on USAfx), pursuant to Fed. R. Crim. P. 41(d)(3),

Date: 1/16/26

City and State: Saint Paul, MN

*Judge's Signature*

Douglas L. Micko
United States Magistrate Judge

*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-mj-23 (DLM)

| | | |
|---|---|---|
| STATE OF MINNESOTA | ) | |
| | ) | ss. AFFIDAVIT OF TIMOTHY G. SCHANZ |
| COUNTY OF RAMSEY | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Timothy G. Schanz, being duly sworn, do hereby state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been assigned to the Minneapolis Field Office Violent Crime Squad for the specific purpose of assisting in criminal investigations pertaining to violations of 18 U.S.C. § 111, Assaults, Impeding or Interfering with Federal Law Enforcement Officers, in the state of Minnesota. I have completed the FBI Academy and been employed with the FBI as a Special Agent since 2016. Prior to the FBI, I was employed as a Police Officer since 2007. In my time as a law enforcement officer, I have investigated numerous assaults to include interfering, assaulting or intimidating a law enforcement officer during the official performance of their duties.

2. This Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint and arrest warrant for Alfredo Alejandro ALJORNA (YOB 1999) (ALJORNA) and Julio Cesar SOSA-CELIS (YOB 2001) (SOSA-CELIS) for aiding and abetting forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal law enforcement officer and

involving physical contact with the officer, in violation of Title 18, United States Code, Sections 2, and 111 (a)(1).

3. This Affidavit is based on my personal knowledge, information I have learned from other law enforcement officers, and my review of written material or other evidence obtained by the FBI and other law enforcement agencies during the ongoing investigation of this matter. Because this Affidavit only includes information believed to be sufficient to establish probable cause for the sought after criminal complaint and arrest warrants, this Affidavit does not include all the details and information known to me and the government regarding this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

4. At approximately 6:00 pm on January 14, 2026, Deportation Officers with the Immigration and Custom's Enforcement (ICE) Enforcement and Removal Operations (ERO) were conducting ERO enforcement operations in or around Minneapolis, Minnesota. Two ERO Agents, hereafter referred to as ERO #1 and ERO #2 were part of a larger out-of-state ERO team temporarily assigned to the enforcement detail in Minneapolis. As a result, neither ERO Agent was familiar with the Minnesota area. The two ERO Agents were riding together in an unmarked ERO vehicle equipped with emergency lights and a siren. ERO #1 was driving the unmarked vehicle, and ERO #2 was riding as the front-seat passenger. ERO #1 was wearing a tactical belt with his badge, firearm and equipment, and ERO #2 was wearing overt body armor with law enforcement markings, to include "POLICE," placed across his chest.

5. While running publicly visible license plates through ICE databases, the ERO Agents ran a silver/grey Ford Focus with Minnesota license plate RXB619, hereafter SUBJECT VEHICLE. Based on the information returned from the ICE databases, the ERO Agents learned that the registered owner of SUBJECT VEHICLE was Joffre Stalin Paucar BARRERA (YOB 1991), and they believed the subject they observed driving SUBJECT VEHICLE was BARRERA, the registered owner. The physical description of BARRERA is approximately 35 years old, 5'2, 128 pounds with short brown hair. ICE database checks indicated that BARRERA, the registered owner, was illegally in the United States because BARRERA was not a citizen of the United States and had no record of crossing a legal port of entry.

6. As part of the ERO enforcement operations, ERO #1 initiated a traffic stop on SUBJECT VEHICLE by activating the unmarked vehicle's emergency lights and siren and attempting to pull the vehicle over. At that point, SUBJECT VEHICLE fled from ERO at a high-rate of speed, and a vehicle pursuit ensued. The unmarked ERO vehicle pursued the SUBJECT VEHICLE with lights and sirens for what ERO estimated was 15 to 20 minutes. The SUBJECT VEHICLE recklessly zig-zagged through traffic and tried to lose the ERO vehicle. The ERO Agents, who were not familiar with the area, lost track of the exact location of SUBJECT VEHICLE during the pursuit, until the SUBJECT VEHICLE hit a light pole near the 600-block of North 24th Avenue in Minneapolis, MN. The ERO Agents then observed the driver and lone occupant, a male subject later identified as ALJORNA, get out of the SUBJECT VEHICLE and run to the vicinity of what was later identified as an

apartment building located at 6xx North 24th Avenue, Minneapolis, MN 55411, hereafter SUBJECT RESIDENCE. ALJORNA's physical description per his driver's license is 5'7, 172 pounds with short brown hair and is approximately 26 years old.

7. Your Affiant reviewed driver's license photographs of BARRERA, the SUBJECT VEHICLE's registered owner, and of ALJORNA, and both individuals' license photographs appear similar in nature and physical appearance.

8. ERO #1 exited the unmarked ERO vehicle and chased ALJORNA on foot, while ERO #2 stayed with the unmarked vehicle. ERO #1 told FBI Agents investigating the matter that ERO #1 gave ALJORNA commands in both English and Spanish to stop running, and identified himself as an ICE Agent, as he chased ALJORNA toward the SUBJECT RESIDENCE. ERO #1 saw a separate Hispanic male standing on the porch at the front of the SUBJECT RESIDENCE. (During a post-Miranda custodial interview with SOSA-CELIS, it was determined he was the individual standing on the porch.) SOSA-CELIS yelled to ALJORNA in Spanish to run faster. As ALJORNA ran, he slipped and fell on the ground, and ERO #1 caught up to and grabbed ALJORNA, attempted to detain him, and began tussling with him on the ground. ERO #1 and ALJORNA were approximately six feet from the front door steps, which are approximately ten feet from the front door of the SUBJECT RESIDENCE. ERO #1 then saw SOSA-CELIS (the Hispanic male on the porch) grab a red-handled broom, and SOSA-CELIS began hitting ERO #1 with the red-handled broom stick, while yelling at ERO #1 something to the effect of, "Let him go." ERO #1 stated that he felt the broom stick hitting him in his face. ERO #1 did not have any

protection such as a helmet, and he stated that he felt pain as he was being struck with the broom stick by SOSA-CELIS. ERO #1 then saw who he believed was a third Hispanic male approach with a snow shovel, and this male also began striking ERO #1 with the snow shovel. The area near the SUBJECT RESIDENCE had poor or sporadic lighting, and ERO #1 had difficulty seeing the assailants.

9. As ERO #1 continued to tussle with ALJORNA to try to detain ALJORNA, ALJORNA wiggled out of his shirt or sweater and freed himself of ERO #1's grasp. As ERO #1 lost his grip and hold of ALJORNA, ERO #1 called out for ERO #2 to assist ERO #1, but ERO #1 then realized that ERO #2 was not with ERO #1, and that ERO #1 was in fact alone, in the dark, facing the males. ERO #1 estimated that at this point he had been fighting/tussling with ALJORNA for about three minutes, was exhausted, alone, on the ground, and in fear of his safety.

10. As ALJORNA broke free from ERO #1, he stood up and looked back at ERO #1 with an angry scowl on his face. SOSA-CELIS then passed the broom to ALJORNA, and ALJORNA then attempted to hit ERO #1 in the face or head with the broom stick. ERO #1 was still laying on his back on the ground and used his left hand to shield his head from the blows of the broom strikes from ALJORNA. ERO #1 told FBI Agents that he was struck repeatedly by the broom, and he used his left hand to block a strike that caused a cut or gash to the palm of his hand. Your Affiant reviewed a photograph of ERO #1's hand showing a bloody gash that is consistent with this injury. While blocking the strikes with his left hand, ERO #1 struggled to draw his service pistol with his right hand and pointed it in the direction of his assailants. As

soon as the assailants saw ERO #1 draw his pistol, they dropped the broom and the snow shovel and began to run towards the SUBJECT RESIDENCE. ERO #1 simultaneously fired one round from his pistol towards the vicinity of the assailants and at the time was uncertain if his shot struck any of them. The assailants ran inside the SUBJECT RESIDENCE and closed the front door.

11. ERO #2 provided a statement to the FBI that as the SUBJECT VEHICLE crashed, and ERO #1 pursued the subject-driver on foot, ERO #2 exited his unmarked ERO vehicle and checked the SUBJECT VEHICLE to ensure there was nobody else inside. After clearing the SUBJECT VEHICLE, ERO #2 then returned to the ERO vehicle and followed ERO # 1 as he continued the foot pursuit of the driver. As ERO #1 drove up to the SUBJECT RESIDENCE, he observed ERO #1 engaged in a physical altercation with two male subjects. As ERO #2 exited the ERO vehicle, he heard a gunshot. When he looked back to the SUBJECT RESIDENCE, he noticed the male subjects were gone and believed they fled into SUBJECT RESIDENCE.

12. Multiple state and federal law enforcement agents and officers, responded to the scene of the assault and shooting. ICE Agents eventually entered the SUBJECT RESIDENCE and deployed tear gas, which forced ALJORNA and SOSA-CELIS to surrender to authorities, who took them into custody. Agents learned that SOSA-CELIS had sustained a non-life-threatening gunshot wound to his upper right thigh, and they transported him to a hospital.

13. The FBI Evidence Response Team (ERT) leader on scene observed the front yard and area where the alleged incident occurred. In the front yard, a broom and snow shovel were located approximately 20-feet away from the front door in a manner strewn about the area, appearing to corroborate that they were used in the area where the assault took place. ERT placed search lights on the front of the SUBJECT RESIDENCE and stood by for a search warrant to enter the SUBJECT RESIDENCE. Law enforcement on scene were unable to locate any shell casing or bullet impact with the SUBJECT RESIDENCE.

14. In addition to the ERT leader, other law enforcement officials responding to the incident identified two brooms and a shovel in the front yard of SUBJECT RESIDENCE. The shovel was collected by law enforcement as evidence. Due to the location of the brooms, and the need for a search warrant for the residence and curtilage to investigate the incident, however, law enforcement officers that observed the broom did not secure it as evidence at the time because they were awaiting the signing of a search warrant. Due to unprecedented civil unrest that developed in the vicinity of the scene in the immediate aftermath of the incident and shooting, including severe damage to property, violent threats and danger to the officers and agents on scene, an exigent situation and scene developed, and BCA, FBI, and DHS leadership made the decision to leave the SUBJECT RESIDENCE without executing a full search warrant. When the search lights were removed from the scene, personnel noticed an extremely dark front yard.

15. Agents with the FBI and the Minnesota Bureau of Criminal Apprehension (BCA) conducted a BWC-recorded post-Miranda interview of SOSA-CELIS with the assistance of a non-involved ICE Officer Spanish interpreter at the hospital. SOSA-CELIS was receiving treatment for the gunshot wound to his thigh at the time. SOSA-CELIS expressed his knowledge of immigration status issues with his and ALJORNA's status. SOSA-CELIS and ALJORNA worked as food delivery drivers and purposely worked at night believing they were less likely to encounter ICE at that time. The FBI learned that SOSA-CELIS and ALJORNA referred to each other as "cousins," but they are not related. SOSA-CELIS told the FBI that while he was at the SUBJECT RESIDENCE, he had received a call from ALJORNA, and ALJORNA told SOSA-CELIS that ALJORNA thought ICE was trying to stop his vehicle. SOSA-CELIS told ALJORNA to drive to the SUBJECT RESIDENCE, and ALJORNA then attempted to flee in his vehicle from ICE to the SUBJECT RESIDENCE. Later, while looking out of the front door, SOSA-CELIS believed he saw ALJORNA crash his car as ICE was chasing him. SOSA-CELIS saw ALJORNA running towards the SUBJECT RESIDENCE and then one of the ICE officers was on top of him. SOSA-CELIS stated that he had a snow shovel in his hands around this time, but claims he never used it. SOSA-CELIS also saw ALJORNA with a broom in his hand, as though ALJORNA was trying to, or actually, striking the ICE officer with the broom. SOSA-CELIS claimed he then physically pulled ALJORNA away from the ICE officer, through the doorway, and locked the door behind them. At this time, SOSA-CELIS stated was shot in the leg. SOSA-CELIS believed he saw four to

five ICE agents outside when this was happening. SOSA-CELIS stated he knew ALJORNA was running from ICE and SOSA-CELIS was trying to help him evade ICE. SOSA-CELIS did not identify a third subject being involved in the physical altercation with the ICE Officer.

16. Agents with the FBI conducted two separate, recorded post-Miranda interviews with ALJORNA in an ICE detention facility with the aid of a believed-to-be certified Spanish interpreter. ALJORNA stated he knew it was ICE before they attempted to stop him, and he deliberately fled from ICE at speeds of up to 80 MPH for what he thought was 25 to 30 minutes. ALJORNA ran multiple stop signs and would turn right at all the red lights. While fleeing, ALJORNA called SOSA-CELIS to let him know ICE was trying to stop him, and SOSA-CELIS told him to go to the SUBJECT RESIDENCE. SOSA-CELIS was at work when ALJORNA called him but was at the SUBJECT RESIDENCE when ALJORNA got there. As ALJORNA drove up to the house, he slid into the snowbank and got out on foot to run from ICE into the SUBJECT RESIDENCE. As he was running into the house, he slipped and was then tackled by an ICE Agent. The ICE Agent was on top of him, struggling with him, but ALJORNA was able to get on top of the ICE Agent and eventually had the Agent underneath him. ALJORNA slipped out of his jacket that was in the ICE Agent's grasp, and he ran into SUBJECT RESIDENCE. Before he ran into the SUBJECT RESIDENCE, ALJORNA stated he grabbed a broom that was by the door and threw it in the direction of the ICE agent. As ALJORNA ran into SUBJECT RESIDENCE, SOSA-CELIS locked the door and was shot in the upper right leg through the door.

ALJORNA could not recall SOSA-CELIS pulling him away. ALJORNA, SOSA-CELIS, their two girlfriends, and two minors, then went upstairs to their apartment, Unit 2, and hid in one of the bedrooms. They later moved to a second bedroom, where ALJORNA and SOSA-CELIS moved a TV stand in front of the door to block it. ICE eventually entered the residence and tried to breach the bedroom door that they had blocked, but ICE could not get in. Eventually, due to tear gas and fear for the safety of the minors, AJORNA and SOSA-CELIS unblocked the door, and ICE came in to detain them.

17. ALJORNA claimed that he had bought the SUBJECT VEHICLE off Facebook marketplace for $750 approximately five months earlier, but he had not transferred ownership of the vehicle from the previous owner. ALJORNA did not identify a third subject being involved in the physical altercation.

18. The FBI conducted recorded post-Miranda interviews, with the aid of a Spanish interpreter, with the girlfriends of ALJORNA and SOSA-CELIS, and both provided statements to the FBI. The two women observed what they believed happened in front of the SUBJECT RESIDENCE. They had been near the open doorway when they observed ALJORNA get tackled and in a physical altercation with someone whom they believed to be ICE. One girlfriend did not recall if any weapons were involved, but the other girlfriend stated no weapons were involved. Both recall a plastic snow shovel kept outside of the front door for snow removal, and one specifically recalled a broom as well. Both women recall SOSA-CELIS physically separating or pulling on ALJORNA to assist him in escaping the ICE Agent and

fleeing into the house. One witness recalls the gunshot happening after the door was locked but without damaging the door, while the other recalls hearing a gunshot before hearing the door shut. The six occupants, to include two minors, barricaded in a front bedroom for approximately 10 minutes while tear gas was being deployed. They then moved to a back bedroom and barricaded. They were eventually detained by law enforcement. Both women admitted to calling 911 at different points during the incident. When they were barricaded in the first bedroom, both girlfriends became certain that it was ICE outside because they could see their law enforcement markings.

19. ICE detained another Hispanic male subject that resided in the first story apartment, Unit 1, of the SUBJECT RESIDENCE with other occupants. The FBI conducted a post-Miranda interview with this witness. After hearing a noise he thought was a gunshot, the witness looked outside and saw ALJORNA being chased by someone wearing a tactical vest and face mask. This individual denied ever going outside and no other subjects or witnesses identified that he was involved in the incident.

20. An FBI Agent preliminarily reviewed CCTV video accessible by the Minneapolis Police Department that captured portions of the incident. Due to the distance, coverage, and panning changes of the camera, only certain portions, and not the entirety of the incident, were captured. The video captures three individuals in a physical altercation in the immediate vicinity of the SUBJECT RESIDENCE. One individual is initially seen in the front yard with a shovel. A second individual is seen

running towards the SUBJECT RESIDENCE, and a third individual is seen chasing the running individual. Camera focus and coverage changed during the recording but the video captured the three individuals in what appeared to be a physical altercation in the front yard. As the video progresses, one individual is seen laying on the ground with two people running toward the house that was out of the frame.

21. ALJORNA and SOSA-CELIS remain in ICE custody in Minnesota on a temporary immigration hold pending criminal charges for this incident.

## CONCLUSION

22. Based on the totality of the facts and circumstances within this Affidavit, the reasonable inferences therefrom, Your Affiant's training, experience, and knowledge of the investigation, Your Affiant has probable cause to believe that on or about January 14, 2026, in the State and District of Minnesota, Alfredo Alejandro ALJORNA and Julio Cesar SOSA-CELIS violated Title 18, United States Code, Sections 2 and 111(a)(1) (aiding and abetting the forcible assault, resistance, and impeding of a federal law enforcement officer involving physical contact with the officer).

Respectfully submitted,

Timothy G. Schanz
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (via Zoom and
box on USAfx) pursuant to Fed. R. Crim. P. 41(d)(3)
on January 16, 2026:

DOUGLAS L. MICKO
United States Magistrate Judge
District of Minnesota